■ JAMES L. MELCHER, Respondent, v GREENBERG TRAURIG LLP et al., Appellants. [24 NYS3d 249]—

Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered May 19, 2015, which, insofar as appealed from, denied defendants' cross motion for summary judgment dismissing the complaint alleging a violation of Judiciary Law § 487, unanimously affirmed, with costs.

This action involves a claim that defendants Greenberg Traurig, LLP (GT) and Leslie D. Corwin, a GT partner, engaged in deceit while representing their clients in an action entitled *Melcher v Apollo Med. Fund Mgt. L.L.C.*, (Sup Ct, NY County, index No. 604047/03) (the *Apollo* action). Issues involving the *Apollo* action have come before us numerous times in various iterations; on this appeal, plaintiff James L. Melcher seeks treble damages for attorney deceit under Judiciary Law § 487.

Background

The background to the *Apollo* action bears repeating here. In 1995, Brandon Fradd founded Apollo Medical Partners (Apollo), a hedge fund focusing on the biotechnology industry. Fradd also founded Apollo Medical Fund Management, L.L.C. (Apollo Management) to manage investor money on behalf of the hedge fund. After the hedge fund suffered extensive losses in late

1997, Fradd decided to bring in Melcher, an experienced investment manager, as a member and manager of Apollo Management.

Melcher and Fradd, along with one other member of Apollo Management, signed an operating agreement, dated January 8, 1998, setting forth a formula to divide profits among them.[1] Under the agreement, Melcher and Fradd were to share equally the net profits realized from new investment assets brought into the hedge fund after Melcher became a member of Apollo Management. Melcher maintains that he complained to Fradd in January 2001 about the amounts he was receiving under the operating agreement, and that he met with Fradd over the next two years in the hope that they could resolve the matter amicably. Fradd asserts that no such meetings took place, and that Melcher never complained about the division of net profits. When Fradd and Melcher were unable to come to an agreement, Melcher commenced the *Apollo* action in 2003, asserting, among other things, that Fradd and Apollo Management had breached the operating agreement by failing to pay the amounts due to Melcher under that agreement.

In December 2003, Fradd produced a document that he maintained was a May 1998 amendment to the parties' operating agreement (the disputed amendment). According to the disputed amendment, Melcher and Fradd had changed the formula for dividing profits so that Melcher was entitled only to certain compensation for money that he brought into the fund, not on all money that came in after January 1998. Melcher, however, insisted that no amendment ever existed, asserting that Fradd had forged and backdated the document only after the dispute arose, and only after Fradd's corporate counsel had informed him that a defense based on an oral amendment to the operating agreement had no more than a 50-50 chance of surviving a summary judgment motion.

At a January 27, 2004 meeting with Fradd and his counsel, Corwin stated that he had confirmed the disputed amendment's authenticity with Jack Governale, Apollo's former corporate counsel, who had purportedly drafted it. Melcher's counsel asked Corwin to turn over the original disputed amendment so that Melcher could determine, through forensic testing of the ink, whether Fradd had actually signed the document in May 1998.

However, before Melcher could send the disputed amend-

---

**1.** The other member of Apollo Management, who is not a party either to this action or the *Apollo* action, was removed from his position in May 1998.

ment for forensic testing, the document was damaged in a fire. According to Fradd, the day after the January 27 meeting, he brought the disputed amendment with him into the kitchen while he was making tea, and he set it on a counter next to the stove. When he went to answer the doorbell, Fradd said, the amendment caught fire and the first page was destroyed despite his efforts to put the fire out with water. Fradd stated that the portion of the second page that bore his signature was singed in the fire, and he dried it in the microwave oven to avoid smudging the ink. On February 1, 2004, Fradd informed Corwin via email of the incident. Melcher, however, did not learn of the alleged burning until March 18, 2004.

In mid-2007, Melcher, asserting that Fradd had engaged in spoliation of evidence, sought discovery from GT under the crime-fraud exception to the attorney-client privilege. The trial court granted GT's motion to quash the discovery request. Melcher also moved to strike the defendants' pleadings because they were deceitful, and to disqualify GT and Corwin as the defendants' counsel on the same basis, and the court denied those motions. On appeal, this Court affirmed the trial court's orders. In so doing, this Court held that Melcher had not "conclusively demonstrated" deceit with respect to the disputed amendment, and that the matter presented an issue for the trier of fact (*Melcher v Apollo Med. Fund Mgt. L.L.C.*, 52 AD3d 244, 245 [1st Dept 2008]).

The *Apollo* action then proceeded to a jury trial in May 2009. Before trial began, the defendants decided to proceed on a theory of oral amendment of the operating agreement and accordingly, informed the court that they would not rely either on the disputed amendment or on Fradd's sworn assertion that the document was genuine. The trial court (Donna M. Mills, J.), granted the defendants' motion to withdraw the disputed amendment as a proposed trial exhibit, provided that Melcher was precluded from offering any evidence purporting to show that the disputed amendment was a backdated forgery (except in rebuttal if the defendants raised the issue).

At trial, the jury rejected Fradd's claim that the operating agreement had been orally amended and also found that Fradd had breached the operating agreement. However, the jury also found that Melcher was equitably estopped from asserting that the defendants had breached the operating agreement because he had initially accepted without objection the amounts that the defendants had paid to him under the operating agreement. In February 2010, the IAS court (Melvin L. Schweitzer, J.), entered a judgment in accord with the jury verdict.

In January 2013, this Court reversed the judgment entered after the trial in the *Apollo* action, setting aside the estoppel verdict, reinstating the breach of contract claim, and granting judgment as to liability in Melcher's favor on his breach of contract claim (*Melcher v Apollo Med. Fund Mgt. L.L.C.*, 105 AD3d 15, 29 [1st Dept 2013]).[2] We further directed that the matter be remitted for a hearing on Melcher's allegations that Fradd had "fabricated, backdated and intentionally burned" the disputed amendment (*id.* at 23, 25, 29). We noted that, although striking defendants' pleadings would have been an inappropriate sanction at that stage of the proceedings, we were "troubled that the allegations of fraud and deceit remain[ed] unaddressed" (*id.* at 25).

In January 2014, Melcher and Fradd negotiated a settlement agreement in the *Apollo* action. The agreement explicitly carved out from the general releases Melcher's pending claims against GT and its "shareholders [and] partners," and specifically reserved Melcher's rights and remedies in the action underlying this appeal. The settlement agreement also provided that no amount paid under it was "in regard to any liability of [GT] or Leslie D. Corwin pursuant to Judiciary Law Section 487, whether asserted in the [action underlying this appeal] or otherwise."

The Current Action

In July 2007, at about the same time that he moved to strike the pleadings in the *Apollo* action, Melcher commenced the action underlying this appeal, alleging that defendants had engaged in deceitful and collusive conduct during their representation of Fradd and Apollo Management in the *Apollo* action and asserting an action for treble damages under Judiciary Law § 487. Melcher asserted that Fradd deliberately burned the disputed amendment so that Melcher would not be able to determine through forensic testing when the document had been signed.[3] Melcher further alleged that as a result of defendants' actions, he incurred damages from excess legal fees, to be trebled under section 487, and lost use of money for more than three years.

---

**2.** This Court initially dismissed Melcher's appeal because of his failure to timely perfect (2010 NY Slip Op 84265[U] [1st Dept 2011]). However, on Melcher's appeal, the Court of Appeals reinstated the appeal and remitted the matter (18 NY3d 915 [2012]).

**3.** Melcher stated that his forensic expert examined the original document and concluded that the exposure of the document to high heat made it impossible to determine the date of Fradd's signature. The expert also opined that the location of the scorching suggested something other than chance or accident.

In support of his claim, Melcher pleaded that as of February 2004, Corwin had learned that Governale had neither any recollection nor any record of drafting the disputed amendment, and that nothing in Governale's law firm's files or time records suggested that Melcher and Fradd had amended their operating agreement. Indeed, Melcher noted, Governale sent Corwin an email in which he noted that the disputed amendment did not bear a footer even though documents emanating from his law firm generally bore footers. Nevertheless, Melcher alleged, Corwin continued to rely on the disputed amendment, allowing Fradd to submit sworn statements attesting to its legitimacy, and making untrue statements under oath regarding availability of corporate counsel for deposition.

Melcher later filed an amended complaint in this action, and defendants moved to dismiss under CPLR 3211 (a) on the ground that the Judiciary Law § 487 claim was barred by the three-year statute of limitations. The statute of limitations issue was litigated up to the Court of Appeals, which held that the section 487 claim was governed by the six-year statute of limitations in CPLR 213 (1), and that this action was therefore timely commenced (*Melcher v Greenberg Traurig, LLP & Leslie D. Corwin*, 2011 NY Slip Op 34074[U] [Sup Ct, NY County 2011], *revd* 102 AD3d 497 [1st Dept 2013], *revd* 23 NY3d 10 [2014], *rearg denied* 23 NY3d 998 [2014]).

Melcher then moved for partial summary judgment on liability. Defendants opposed the motion and also cross-moved for summary judgment, arguing that a section 487 action could not be interposed as a plenary action, but rather, had to be raised in the proceeding in which the alleged misconduct occurred. Further, at oral argument on the motion, defendants argued that the deceit issue had been litigated in multiple motions in the prior action and therefore "claim splitting" and "collateral estoppel" were involved, because the facts regarding the alleged deceit "were not only known but they were raised" in the prior action.

The IAS court denied both Melcher's motion for summary judgment as to liability and defendants' cross motion for summary judgment dismissing the complaint. Defendants now appeal from so much of the order that denied their cross motion for summary judgment.

Analysis

To begin, defendants waived their right to seek dismissal of the case on collateral estoppel grounds when they failed to raise the issue in their motion to dismiss on statute of limitations grounds. Defendants fully litigated their motion to

dismiss, up to and including an appeal to the Court of Appeals, which found that Melcher's action was not time-barred. Now, after that motion has been fully resolved, defendants premise their summary judgment motion on their conclusion that dismissal is warranted on claim-splitting and collateral estoppel grounds. But because they failed to raise those defenses on their motion to dismiss, defendants cannot now be heard to say that the trial court should have dismissed this action under those defenses (CPLR 3211 [a] [5]; [e]). This conclusion holds especially true because both defenses are supported entirely by facts that defendants knew when they interposed their first motion.[4]

Turning now to defendants' Judiciary Law § 487 argument, we find that under the circumstances presented, it was proper for Melcher to assert a Judiciary Law § 487 claim in a separate action, rather than seeking leave to assert a claim against the attorney defendants in the *Apollo* action.

Judiciary Law § 487 (1) provide, among other things, that an attorney who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . forfeits to the party injured treble damages, to be recovered in a civil action." A plaintiff may bring an action to recover damages for attorney deceit regardless of whether the attorney's deceit was successful (*Amalfitano v Rosenberg*, 12 NY3d 8 [2009]). Further, the plaintiff in a section 487 case may recover the legal expenses incurred as a proximate result of a material misrepresentation in a prior action (*see Pomerance v McGrath*, 124 AD3d 481, 485 [1st Dept 2015], *lv dismissed* 25 NY3d 1038 [2015]).

First of all, we do not credit defendants' argument that because Melcher raised the same claims in his motions in the *Apollo* action, he is now precluded from asserting a section 487 claim in this action—that is, that Melcher is improperly engaging in "claim splitting." A party invoking the narrow doctrine against splitting a cause of action must show that the challenged claim raised in the second action is based upon the same liability in the prior action, and that the claim was ascertainable when the prior action was commenced (*see Murray, Hollander, Sullivan & Bass v HEM Research*, 111 AD2d

---

**4.** In his opposition brief, Melcher argues that defendants' prior motion to dismiss on statute of limitations grounds and this cross motion for summary judgment were each, in effect, motions for summary judgment made after service of the answer, and thus are improper successive summary judgment motions. We reject this argument; as noted above, defendants' prior motion was, in fact, a motion to dismiss, not a motion for summary judgment.

63, 66 [1st Dept 1985]; *Solow v Avon Prods.*, 56 AD2d 785 [1st Dept 1977], *affd* 44 NY2d 711 [1978]). However, if the liabilities or claims alleged in the two actions arise from different sources, instruments, or agreements, the claim splitting doctrine does not apply (*see Murray, Hollander, Sullivan & Bass*, 111 AD2d at 66-67; *see also 1050 Tenants Corp. v Lapidus*, 118 AD3d 560, 560-561 [1st Dept 2014]).

Here, Melcher alleged in the *Apollo* action that Apollo Management and Fradd breached a contract and engaged in fraud by preventing him from receiving partnership profits. The basis for Melcher's attorney deceit claim against GT and Corwin did not arise until *after* Fradd had burned the amendment, while the *Apollo* action was pending. Therefore, the claims asserted against Fradd and Apollo Management in the *Apollo* action did not arise from the same nucleus of facts as the section 487 claim in this action. On the contrary, the remedy sought against the defendant attorneys in this case is entirely distinct from the remedy sought against their former clients in the *Apollo* action. Indeed, the Judiciary Law claim did not even exist when plaintiff commenced the *Apollo* action (*see 1050 Tenants*, 118 AD3d at 560-561). Accordingly, plaintiff is not claim splitting when he brings section 487 claims against GT and Corwin in this action.

Nor is plaintiff collaterally estopped from litigating the issue of the alleged deceit in this action, as that issue was never fully litigated and decided in the *Apollo* action (*see Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455-456 [1985]; *Americorp Fin., L.L.C. v Venkany, Inc.*, 102 AD3d 516, 516 [1st Dept 2013]). To be sure, Melcher made a motion to strike defendants' pleadings in the *Apollo* action on the basis that the disputed amendment was a fabrication (*see Melcher v Apollo Med. Fund Mgt. L.L.C.*, 52 AD3d 244, 245 [1st Dept 2008]). However, a motion is not a cause of action, but rather, is a request for relief; the complaint in the *Apollo* action never contained a cause of action alleging that the defendants had relied on a fabricated document (*see Melcher*, 105 AD3d at 19). Moreover, this Court explicitly found on the postverdict appeal that plaintiff's "allegations of fraud and deceit remain[ed] unaddressed" because the defendants had decided not to rely on the allegedly fabricated document (*id.* at 25). The matter was therefore remitted for an evidentiary hearing on those issues. But before the hearing could take place, Melcher reached a settlement with Fradd, specifically excluding the pending Judiciary Law § 487 claim against defendants here.

Similarly, it is true that Melcher, in the *Apollo* action, moved

to disqualify GT and Corwin for their alleged fraud on the court. Nonetheless, Melcher never amended his complaint in that action to include "fraud on the court" claims predicated upon section 487. Defendants also never sought to consolidate this action with the *Apollo* action while they were both pending, even though they were before the same judge. Under these circumstances, defendants cannot advance a credible argument that the matter has already been fully litigated and decided.

Finally, defendants argue that according to our case law, a Judiciary Law § 487 claim brought in a separate action must be dismissed because a plaintiff's remedy lies exclusively in the underlying lawsuit itself. Hence, defendants argue, Melcher should have moved under CPLR 5015 to vacate the civil judgment in the *Apollo* action on the ground of fraud, rather than beginning a second plenary action collaterally attacking the judgment in the *Apollo* action.

We reject this argument. In contrast to the situations in the cases on which defendants rely, Melcher does not, in fact, seek by this action to collaterally attack any prior adverse judgment or order on the ground that it was procured by fraud; if that were the case, the appropriate remedy generally would be to seek vacatur under CPLR 5015 (*see e.g. Yalkowsky v Century Apts. Assoc.*, 215 AD2d 214, 215 [1st Dept 1995] [plaintiff alleged that the defendant's attorney in a Civil Court proceeding had made a misrepresentation to the Civil Court, resulting in dismissal of the plaintiff's constructive eviction claim]; *see also Melnitzky v Owen*, 19 AD3d 201 [1st Dept 2005] [section 487 claim properly dismissed where the plaintiff claimed that the defendant deceived Civil Court, which was hearing his malicious prosecution claim, by concealing rulings by Supreme Court]). Instead, plaintiff here seeks to recover lost time value of money and the excess legal expenses incurred in the *Apollo* action as a proximate result of defendants' alleged deceit; this course of action is permissible in a separate action under the Judiciary Law (*Amalfitano*, 12 NY3d at 15).

The language of section 487 supports this conclusion, because that section does not require that the claim be asserted in the same action in which the violation occurred. Rather, the section simply provides that an attorney who has practiced a deception will be liable for treble damages "to be recovered in a civil action" (*see Four Star Stage Light. v Merrick*, 56 AD2d 767, 768 [1st Dept 1977] [holding that a section 487 claim brought in a second action should survive a motion to dismiss because it was adequately pleaded]; *see also Pomerance v McGrath*, 124 AD3d at 485 [finding that "it was not improper for

plaintiff to bring a Judiciary Law § 487 claim in this action even though it is based on alleged deceit in a prior action," but denying leave to add this claim on other grounds]; *Armstrong v Blank Rome LLP*, 126 AD3d 427 [1st Dept 2015] [section 487 claim brought in a second action alleging an undisclosed conflict of interest for an attorney who represented a litigant in divorce proceedings was adequately pleaded and should survive a motion to dismiss]). In fact, a court may not grant a motion for leave to amend a complaint to add a section 487 claim in the action in which the violation occurs, particularly if adding that claim would "require the disqualification of counsel and prejudice [the defendant's] right to be represented by attorneys of its choice" (*360 W. 11th LLC v ACG Credit Co. II, LLC*, 90 AD3d 552, 554 [1st Dept 2011]). Those very concerns would, in fact, have been present in this case.

Our decision in *Zimmerman v Kohn* (125 AD3d 413 [1st Dept 2015], *lv denied* 25 NY3d 907 [2015]) does not compel a different result. In that case, the IAS court dismissed the section 487 claim on the basis that the plaintiffs' remedy for a violation of that section lay exclusively in the underlying federal action, not in a separate plenary action (*Zimmerman v Kohn*, 2014 WL 1490936, *2-3 [Sup Ct, NY County, Apr. 11, 2014, No. 652826/13]). However, on appeal, this Court did not address that issue at all. Instead, we held only that dismissal of the section 487 claim was warranted because the plaintiffs, after settling the prior action, paid their counsel based on a contingency fee arrangement, and therefore could not show that the defendants' misrepresentations proximately caused them any injury (*Zimmerman*, 125 AD3d at 414).

We have considered defendants' remaining contentions and find them unavailing. Concur—Acosta, J.P., Renwick, Moskowitz and Gische, JJ. 