Melcher v Greenberg Traurig LLP (2018 NY Slip Op 06310)





Melcher v Greenberg Traurig LLP


2018 NY Slip Op 06310


Decided on September 27, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 27, 2018

Friedman, J.P., Tom, Mazzarelli, Singh, JJ.


650188/07 -5746N 5745 5744

[*1] James L. Melcher, Plaintiff-Appellant,
v
Greenberg Traurig LLP, et al., Defendants-Respondents.


Jeffrey A. Jannuzzo, New York, for appellant.
Simpson Thacher & Bartlett LLP, New York (Thomas C. Rice of counsel), for respondents.



Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered on or about August 16, 2017, which, to the extent appealed from as limited by the briefs, granted defendants' motions in limine to preclude the testimony of Jonathan Lupkin and James Lynch as expert witnesses on plaintiff's behalf, unanimously modified, on the facts and in the exercise of discretion, to permit plaintiff to call Lupkin to testify at trial concerning plaintiff's alleged damages, subject to the limitations set forth in this decision, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered on or about August 31, 2017, which denied plaintiff's motion for renewal and granted plaintiff's motion for reargument and, upon reargument, adhered to the prior determination, unanimously dismissed, without costs, as academic.
The factual background of this appeal is more fully set forth in our decision on a prior appeal herein (135 AD3d 547, 547-550 [1st Dept 2016]) (Greenberg Traurig) and in our decision on the final appeal in a prior related action (Melcher v Apollo Med. Fund Mgt, L.L.C, 105 AD3d 15, 18-23 [1st Dept 2013]) (Apollo). In brief, plaintiff, James L. Melcher, and nonparty Brandon Fradd were formerly members and managers of nonparty Apollo Medical Fund Management L.L.C. (AMFM). In December 2003, Melcher commenced the Apollo action against AMFM and Fradd, in which he asserted, among other causes of action, the claim that he had not been paid $6.5 million of AMFM's profits to which he was entitled under the entity's operating agreement. Defendants in the present action, attorney Leslie D. Corwin, Esq. and his former law firm, represented AMFM and Fradd in Apollo.[FN1]
One of the principal defenses asserted by AMFM and Fradd to Melcher's claim for unpaid profits in the Apollo action was the contention that the parties had agreed in May 1998 to amend the operating agreement to reduce Melcher's share of the profits. That amendment, Fradd alleged, had been memorialized in a written amendment, purportedly dated May 21, 1998 (the 1998 writing). The original 1998 writing was partially destroyed (through accidental burning, according to Fradd) before Melcher had been given an opportunity to examine it. However, a copy of the document survived. Melcher took the position that the 1998 writing was a fabricated and backdated document that Fradd had created in 2003, when the dispute with Melcher arose, and that Fradd had deliberately burned the document when Melcher demanded its production for forensic examination.
Fradd and AMFM, through Corwin, their counsel, continued to assert that the alleged amendment of the operating agreement was evidenced by the 1998 writing from February 17, [*2]2004, the date of their initial motion to dismiss the Apollo complaint, until May 11, 2009, the first day of trial. On the latter date, just before opening arguments, Corwin announced that Fradd and AMFM would not rely at trial on the 1998 writing, although they would continue to argue that the operating agreement had been modified orally. The trial resulted in a jury verdict finding, inter alia, that, although the operating agreement had not been orally modified as alleged by Fradd, Melcher was equitably estopped to assert that AMFM had breached the agreement by underpaying him (see Apollo, 105 AD3d at 22).
Upon appeal, this Court set aside the equitable estoppel verdict, directed entry of judgment as to liability in favor of Melcher on his contract claim against AMFM, and remanded the matter for an assessment of Melcher's contract damages and "for a hearing on [Melcher's] allegations of spoliation and fraud" concerning the 1998 writing (Apollo, 105 AD3d at 29). On remand, a judgment in the principal amount of $6.5 million was entered in favor of Melcher on his contract claim against AMFM, which by that time was insolvent. Thereafter, in January 2014, Melcher settled his spoliation and fraud claims against Fradd, and agreed to discharge the judgment against AMFM, in exchange for a payment of $5 million from Fradd. In the settlement, Melcher reserved any rights he might have against Corwin, who by then was no longer representing Fradd and AMFM.
In the present action, Melcher seeks to recover treble damages against Corwin on the theory that Corwin, by propounding the allegedly fabricated 1998 writing on behalf of Fradd and AMFM in the Apollo action, engaged in "deceit or collusion, or consent[ed] to . . . deceit or collusion, with intent or deceive the court or any party" (Judiciary Law § 487[1]). Before us is Melcher's appeal from, inter alia, Supreme Court's order granting Corwin's motion in limine to the extent of excluding the testimony of two of Melcher's expert witnesses, Jonathan Lupkin and James Lynch. We note that, contrary to Corwin's contention, the order determining the motion in limine is appealable because it involves the merits of the controversy and affects a substantial right (see Credit Suisse First Boston v Utrecht-America Fin. Co., 84 AD3d 579, 580 [1st Dept 2011]).
Initially, we find that the court's preclusion of Lynch's testimony should be affirmed. Melcher proposes to call Lynch to testify to the calculation of the difference in value between the judgment he obtained against the insolvent AMFM and the lesser amount he received in his subsequent settlement with Fradd. It is, however, entirely a matter of speculation whether the Apollo action would have been resolved while AMFM was still solvent had the 1998 writing not been propounded. Accordingly, that theory of damages, in support of which Melcher proposes to call Lynch to testify, does not afford Melcher a proper basis for recovery (see Feldman v Jasne, 294 AD2d 307 [1st Dept 2002]). Since Lynch's testimony is not offered for any other purpose, it was properly precluded.
Melcher's other expert witness, Lupkin, prepared a report calculating the attorneys' fees and other costs Melcher incurred in litigating the Apollo action (excluding certain costs concededly not related to the 1998 writing) beginning from 19 different points in time during the litigation [FN2]. According to Lupkin, the factfinder in this case, based on whichever of these 19 points in time it determines to have been the point at which Corwin learned that the 1998 writing was fabricated, should award Melcher the corresponding damages figure as the amount of the excess legal costs he incurred by reason of Corwin's alleged deceit. Although, for the reasons discussed below, the damages calculation in Lupkin's report cannot be endorsed (even assuming that Melcher proves that Corwin violated Judiciary Law § 487), we conclude, substituting our [*3]discretion for that of Supreme Court, that Melcher should not be precluded from calling Lupkin to testify at trial.[FN3]
Contrary to Melcher's arguments, Supreme Court correctly held that Judiciary Law § 487 entitles Melcher to a recovery based only on the excess legal costs he incurred in the Apollo action that were proximately caused by Corwin's alleged deceit (see Amalfitano v Rosenberg, 12 NY3d 8, 15 [2009]; Greenberg Traurig, 135 AD3d at 552, 554). Thus, the costs of litigating issues that would have been in dispute in the case even if the 1998 writing had never been propounded are not recoverable under Judiciary Law § 487. In this regard, there were several issues in the Apollo action on which the authenticity of the 1998 writing had no direct bearing at all, including: (1) whether Fradd had breached a fiduciary duty to Melcher by diverting potential investors from AMFM to another fund in which Melcher had no interest; (2) whether Fradd had improperly removed Melcher as a manager and a member of AMFM; and (3) whether the operating agreement required AMFM's dissolution upon Fradd's removal of Melcher.
Further, the question of the authenticity of the 1998 writing — although it was highly relevant to determining whether the AMFM operating agreement had been modified to reduce Melcher's share of the profits and, as such, was "[o]ne of the central issues in th[at] litigation" (Apollo, 105 AD3d at 20) — was not, by itself, dispositive of the question of whether the operating agreement had, in fact, been modified. This is plain from the fact that the latter question went to trial after the 1998 writing ceased to be an issue in the case. Thus, contrary to the apparent theory of Lupkin's report, Melcher cannot recover the costs he incurred in litigating the Apollo action after Corwin, on behalf of Melcher's adversaries, disclaimed any further reliance on the 1998 writing just before the opening of trial on May 11, 2009. Although the 1998 writing thereupon disappeared from the case, the trial went forward on, among other issues, whether the parties orally modified the operating agreement and, if not, whether Melcher was nonetheless barred by waiver or estoppel from recovering for breach of contract. As a matter of law, the costs of trying these issues, and of subsequent posttrial practice and appeals, cannot be causally attributed to the use of the 1998 writing in the proceedings prior to May 11, 2009.
In view of the foregoing, the potential damages figures proposed in Lupkin's report — each of which assumes that Melcher may recover all of his costs in litigating the Apollo action (excluding only the costs he would have incurred in calculating damages even if a default judgment had been entered in his favor) from the time Corwin learned that the 1998 writing was fabricated, through the end of the case — do not constitute proper bases for recovery. Nonetheless, we are cognizant of the "evident intent [of Judiciary Law § 487] to enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking function" (Amalfitano, 12 NY3d at 14; see also Specialized Indus. Servs. Corp. v Carter, 99 AD3d 692, 693 [2d Dept 2012] [noting that the statutory remedy is "designed . . . to deter" attorneys from "betraying" this obligation]). Accordingly, we exercise our discretion to modify Supreme Court's order to permit Melcher to call Lupkin to testify as an expert witness on damages at trial, with the proviso that his testimony be limited to the assessment of the excess legal costs that Melcher was required to incur, during the period beginning February 17, 2004, [*4]and ending May 11, 2009, as the proximate result of any violation of Judiciary Law § 487 by Corwin that the factfinder may find to have occurred, as discussed above.[FN4]
The foregoing renders academic Melcher's appeal from the denial of his motion to renew or reargue.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 27, 2018
CLERK



Footnotes

Footnote 1:We hereinafter refer to Corwin and his former law firm collectively as "Corwin."

Footnote 2:Lupkin's report does not specify at what point in time he deemed Melcher's costs in litigating the Apollo action to cease to count as damages for any violation of Judiciary Law § 487. Melcher's appellate briefs — which say almost nothing about Lupkin's proposed testimony — do not clarify this point. We note that, on appeal, Melcher no longer seeks to use at trial a second methodology for calculating damages set forth in Lupkin's report.

Footnote 3:To be clear, Corwin vigorously denies that he knew that the 1998 writing was fabricated at any relevant time. Corwin further contends that he reasonably believed the representations of his client (Fradd) that the document was genuine, and that its burning had been accidental, through the point at which the decision was made not to offer it at trial as evidence of the alleged amendment of the operating agreement. To prevail on his claim under § 487, of course, Melcher must prove that Corwin had "actual knowledge" that the 1998 writing was fabricated at some point before the decision was made not to use it at trial (see Facebook, Inc. v DLA Piper LLP [US], 134 AD3d 610, 615 [1st Dept 2015], lv denied 28 NY3d 983 [2016]).

Footnote 4:At certain points, Melcher's brief suggests the theory that, but for Corwin's advocacy of the authenticity of the 1998 writing, and of the accidental nature of its burning, in opposition to Melcher's motions to strike his clients' pleadings in 2007, those motions would have been granted and, therefore, all of Melcher's subsequent costs in litigating the Apollo action may be attributed to Corwin's deceit (assuming such deceit is proved). We reject this theory as unduly speculative.